Court is now in session. Okay, thank you very much. Welcome, counsel. I'm sure you all are now familiar with the video conferencing, but just a reminder that when you're speaking you should be unmuted, but when your opponent is speaking you should be muted. Please also remember you should not take any pictures of this or any recordings, audio, or video. Also please recall that when you reference the record we would appreciate a record site and that rebuttal is for rebuttal only. And with that we will proceed with case number 20-30126 Theriot v. Bldg Trades Untd Pension Trust Fund and we'll begin with Mr. Staub. Good morning, your honors. Harry Staub on behalf of hopefully it will be. I don't, there's a lot of points in here and they're complicated I guess as in all ERISA cases, so I would like to get right into the one that I think drives the most serious errors in the case and that would be the court's characterization of the March 2nd 2018 letter as a substantially compliant ERISA denial of Audrey Hammond's claim to lump-sum retirement benefits attributable to the long-term employment of her husband Robert. Cases that are using substantial compliance with ERISA procedures as a rationale for barring the claimant's receipt of benefits on grounds of failure to exhaust are relatively few. Both the court below and counsel for the relied on this court's unpublished decision in McGowan versus New Orleans Employers International Longshoremen's Association. Judge Higginson, you participated in that decision and it might therefore be familiar to you. Notably, however, this was an unpublished decision. Most importantly, though, the case bears no resemblance to the issue, to the letter that is at issue here. I, once upon a time, had the privilege for quite a few years to serve as general counsel to a health plan. We conducted live hearings and issued letter decisions that clearly demarcated a notice of decision and then after the decision notice, we followed it up with a clear explanation that if the claimant disagreed, then of course he had a right to seek review of the plan decision and then he had a right to get the plan materials and all the documents that were relevant to the claim at no cost, just as the reg requires. If the claimant appealed, we typically followed up to see if there was any additional evidence that he wanted to submit on review. The letter at issue in McGowan followed the same format with one caveat that was seized upon here. That was when it reached the section of explaining the claimant's rights to seek review of any disagreement with the plan decision, a provision which the letter clearly laid out. It then referenced as an attachment a review procedure that was described on the attached pages. That procedure in McGowan is much different than what happened here. The March 2nd letter that was issued by the fund in this action is an aggressive summary of legal position that was in response to a perceived legal threat. The letter doesn't even attempt compliance with ERISA requirements, let alone substantial compliance. In its preliminary paragraph one, counsel aggressively advises counsel for Miscario that she lacks standing to assert her claims. There of course is no provision in a plan document that denies derivative standing to the daughter of the deceased plan beneficiary and none is cited in that. Let me ask you this, Mr. Staub. It seems to me that the failures of building trades to comply with all of the rules could lead to one of two arguments. One argument is therefore they lose on the merits. The other is therefore any problem that Miscario, you know any failure exhaust any procedural violation she made should be excused. Which argument are you making? We're actually going to make three that tie into this letter. We think that the letter should be a judged inadequate to do anything other than you know cause her to be able to go directly into her remand or something the court would want to consider on its own. But the judge did express some opinions in his original decision on the motion to dismiss that suggested that he thought that the claim was otherwise meritorious. I suspect that you know that merits decision would really have to be a remand. We also think that the whole exhaustion, the need to exhaust should be out the window via the deemed exhaustion doctrine or because this circuit incorporates the procedural irregularities into its analysis of whether the proceedings below were full and fair and died in time as part of a benefit claim. Mr. Straub I just want to I'm trying to kind of summarize. It's my understanding that your argument is not that their mess-ups mean the case is over they lose on the merits. It's that their mess-ups mean now we get to get to the merits. Did Theriot's mother in fact have the right to the lump sum and her death before it came in the mail did not change that. That's the merits of the case as I see it and you're just saying we need to get that case decided. Bob's correct. Okay but you're open but that question's important. So the remedy though who decides the merits? There's significant law that would also allow her to be remanded back to the administrator and then to get the final administrative review that she didn't timely. In other words it's not necessarily deemed exhausted end of story. I've seen our case law and most other circuits say the alternative is just get back to where it was truncated. Some cases do remand to the plan for further proceedings and there have been cases in this circuit where the procedural irregularities have been deemed so pervasive that the court just went on ahead and ruled on merits. And you're open to either one? I'm certainly open to either one. Okay let me I mean back on whether or not there was substantial compliance. Obviously I was you're nice to observe that I was on the McGowan panel and the similarity there is that there was an attached clear and unmistakable statement but the difference I think is that the letter here is in tension with it and I noticed Judge Afric below the district court did it say that when we look at these we look at the full set of communications. So is that sort of black letter law that we aren't just looking at the attachment and the plan itself which is usually the linchpin of ERISA but we're also looking at the letter as to how it might interact with the plan? I think you have to look at the letter to see if it accomplishes everything that the claimant is supposed to receive notice of. I mean otherwise the the claimant just gets lost in a proceeding and doesn't really know where to go. Does it matter that this was not a lay claimant alone? This claimant had counsel? I don't think so and the reg doesn't make that distinction and at the time that as you know from the record you know this individual changed counsel. I think she was you know kind of lost as to where to go with this or what to do. She was being told you know by non-ERISA counsel that she had this this letter rejecting her claims and and what what was she to do with it? Now you recall the district court said well this quote discouragement argument is best understood as the the plan simply protecting its position not trying to confuse her or create uncertainty as to notice. Well and you know they certainly could have accomplished that by setting out the letter in a different fashion. You know the preservation of rights doesn't have to be a dictation to a claimant that you know you have no claim and if you do go back to the whole history of communications and you you take the first denial from April 2017 that's all of three lines long by what is perhaps you know the largest and most sophisticated plan in the country it certainly knows better. I can't help but come away with the impression that you know well this this is how you get rid these claims. You know this was a plan that was marked as endangered by the DOL. You know that this is a plan that I think is taking every step that it possibly can to save money and and so you get a kind of a shoo away little two-line letter that doesn't have all the legalese that's going to weigh on into you know other more substantial documents just in case you have to re-characterize them down the line which we believe is what the fund did here. I know there isn't much law in 1133 as you stated at least as it pertains to full and fair notice of exhaustion requirements but remind me from your brief what is the best case on this that where a circuit court has looked at it and said you know a reasonable interpretation wouldn't be understood by the beneficiary this isn't enough. If it doesn't directly come to mind we've got your brief I just was wondering if you did have one because there you know there's a lot of ERISA law but I like you I couldn't find too much on what's substantial compliance as a matter of law when you have attached the plan that does clearly state it in the attached whatever section 2-3 but then the letter accompanying it discourages or even says you can't access it. So of course there's there's quite a bit of conflicting you know jurisprudence and ERISA I think that's part of what makes it so complex to to deal with. I did want you know because the issues are complicated and I'm going to run out of time. I have a couple of things so the other point to answer the question about how this all ties into the March letter is that you know the March letter is also a good takeoff into why the production of the administrative record was so important here. I haven't been involved in a case previously where the administrative record was not instantly popped into the record here that that wasn't done and so we end up not having a definitive statement by the plan a la the introduction of these records not not only of the little bits and pieces of correspondence addressing the claim internally but most importantly we don't get a plan document that they're saying is the plan that applies here and we also don't get you know the collective bargaining agreement which we have made a large deal of because the collective bargaining agreement is defined in both the plan and the summary plan description as one of the basic plan documents. There are a couple of provisions that I wanted to draw to your attention that are in the plan document that suggest that had that inquiry been able to go forward with the administrative record all being filed we would have found out that we indeed did not have the so if if you look at article Roman numeral x section 12 of the plan document which is ROA 153 is the start page and plan document page 86 that section 12 reads except as otherwise provided herein the provisions set forth in this restated plan are applicable only to individuals who are active participants as of December 6th 2017. Well Mr. Hammond was quite deceased retired and deceased by then and active participants as you would expect are defined to be those participants who are still working and contributing to the plan. The section goes on to say inactive participants benefits shall be determined under prior plans except as specifically provided herein. Now that's not an academic provision when you take it in in well alongside of the section that is on page 101 which coincidentally is right after the review pages but excised from those pages in the production that was given to the claimant and that section is entitled non-forfeitability and that of course says the benefits to which participant is entitled under this plan upon his attainment of normal retirement age are non-forfeitable. The benefits to which his surviving spouse is entitled shall likewise be non-forfeit. So this is what I would have expected to find for a pension plan unlike the welfare benefit plans I dealt with. Pension rights get frozen at a point in time which is marked by the retirement. So we don't even know given that provision whether or not some other plan was really the governing plan and did it even have the same exhaustion and review proceeding that was to be followed because that suggests on its face that we don't even have the correct plan. When in the record did your client with prior counsel or anyone raise the discouragement argument that so you understand my question because if I remember a footnote in Judge Afric's reconsideration order he said this was not even raised until after I dismissed the case. Do you remember that footnote and is he correct? But the letter was an active discouragement? Yeah. That permeated all of our oppositions you know from the original motion to dismiss to you know the motion for reconsideration certainly has it in. Okay so it's been there throughout? It's been there throughout. We of course at the time of the original motion to dismiss couldn't have suspected that he was going to re-characterize that letter so most of the prior denial in April 2017. Okay you saved some time for rebuttal Mr. Shaw. Please remember to mute yourself and we'll turn to Mr. Ho. May it please the court so let me start by addressing Judge Higginson's last question. An issue of the failure of the discouragement was not raised until the motion to dismiss had been granted. Let me talk about the April 2017 letter for a second. His answer was that your client pretty much has consistently stated that's because they think the original 2017 denial was the one that was compliant. But that wasn't a position we even talk in response to the motion to dismiss. Our position response to the motion to dismiss was whatever defect there was was cured by the March 2nd 2018 letter. The trouble with that is it seems counterfactual because the March 2018 letter refers approvingly and incorporates the 2017. Right the whole premise of the March 2018 letter is that you don't have standing and you're out of time to do anything because you were denied a year ago. Right but that is just a reservation of right to raise the defense and the question that you raised previously though was about what were the arguments that were made in the original motion to dismiss. An argument that was made was the March 2nd letter was adequate and that imposed exhaustion. In fact the April 2017 letter is immaterial to the consideration of the exhaustion requirement for this reason. Imagine for a second that all that happened in this case is there was a March 29, 2017 request to convert a benefit and the fund did not respond at all until the March 2nd 2018 letter. Under controlling the circuit precedent even if there was a delay in processing the claim that is not the type of harm that can just excusing the exhaustion requirement. That's to 15th, 3rd, 481 that plaintiff has not attempted to distinguish or limit in any way their reply brief. So the exhaustion requirement comes down to a simple question. Was that March 2nd, 2018 letter adequate and comply with your red stop? The difficulty I have with accepting that is a lay person and I think we I mean the plan is a fiduciary and we look at how would a lay person interpret the communications. And so yeah I may agree with you that if it had been just the 2018 letter but that letter couldn't even have been written as it was unless there'd been the insistence that the 2017 had sort of ended the story. I don't agree with the characterization there was an insistence because if you look at the 2018 letters specifically at the top of page two what it says is the pension fund reserves the right to assert that the January 5, 2018 letter was an untimely appeal and therefore judicial review was barred. Right but the carryover the first time the plan attachment is even mentioned is on page two at the top and it's attached not saying here's how you can exhaust it's attached to support the plan's argument that she has no remedy anymore she's too late. I disagree your honor after the reservation of defense for the pension fund then they will spend almost entire page outlining why on the merits the claim should be denied and then they attach the entire appeal procedure. There's no reason to attach the procedure the claims already barred. The reason they attach the claim procedure was that despite a reservation of right to raise the defense in the case of judicial review there was a further administrative procedure available and attachments for the purpose of notifying chariot of that availability. McGowan is directly on point here. The difference between McGowan here is in McGowan the entire summary plan description was attached to the denial letter therefore the fund had to tell the claimant where in this large SPD the claim procedures could be located. Here the pension fund only attached the specific provisions that govern appeal so there was no reason for the claim letter to tell the tell terrier exactly where to find the appeal procedure. Well I may refer to the attachment as in McGowan starts out by telling her she's too late and then the sentence after it says this forecloses the ability. So why wouldn't a lay person think okay I've lost it it's too late they think I was over with in 2017 and they're attaching proof to show that I didn't then seek timely exhaustion. So first off Terry out was represented by council at the time if you look and even in October and November 2018 when the terrier senate cause current council sent additional letters they asked what step of administrative procedure are we on terry I didn't abandon the claim in response to this letter at all. I think I think that's your best argument actually. In addition to that if you look at the plain language of the letter but what it says is we reserve the right to raise this timeliness defense and if the defense had merit judicial review will be barred and then the pension fund went on to discuss the merits of the claim and attached appeal procedure. This is a reservation of defense the pension fund had to do that in order to preserve the defense for judicial review. You would most forcefully resist deemed exhaustion but but what's the real resistance to if we assume your letter and all your communications were substantially compliant she would have gotten what's the heart of that? Because because the March 2nd letter was ERISA compliant and because of that and because it was ERISA compliant there is an exhaustion requirement that needs to be enforced here under fifth circuit. Let me tell you what bothers me about your arguments in this case it is we messed this up we messed this up we messed this up but that's okay. She messed up not okay. Why is it okay for you all to mess up but not for her to mess up? Why can't we just go back to where we should have been had everybody done what they were supposed to do which like Judge Higginson said is the administrative procedure. Because this court decision in a way says that appellant is not entitled to ERISA compliant every step of the procedure is entitled to one ERISA compliant denial if it fails to timely request further review after receiving the ERISA compliant denial. Trying to win on the merits as I read it that the appellant was trying to win on the merits based on the mess-ups by the appellee and I'm saying that's not what they're doing here they're not saying we now get the money send us the check they're just saying we get to be heard on this on the merits. So why not that it seems to me everybody messed up right and left in this case why not start over and decide the merits. Because way says you're only entitled to one ERISA compliant benefit denial. But when it wasn't about this it wasn't about this situation so that's I really don't see that there's a case that says we'll let the ERISA pension fund the insurer the whoever mess up but we sure as heck won't let the insured or their beneficiary mess up and that seems inconsistent with the fact that ERISA very much limits the rights of beneficiaries and insureds and pensioners and so on you don't have bad faith cases you don't have all the whole litany of things that you have say in Texas and so to me the idea that we're just going to construe everything in your favor and everything against her seems highly inconsistent with the fact that you already have a lot of things in your favor. But the fund really didn't mess up in a you look at all the communications between the fund and the claimant here because the lawsuit wasn't filed you can look at all the funds communications to terry up and say has an ERISA compliant benefit denial been issued here the answer to that is yes regardless of what the april 2017 letter said the march 2018 letter was an ERISA compliant denial thereby imposing thereby triggering the 60 days for terry apple file administrative appeal if you're not disputing you're not disputing the district court's statement that that 2017 letter was not compliant i am not but and but do you also the context of that though yeah but do you also therefore then if you're i agree with you and that's candid but but it's also not disputable that the 2018 letter still tries to incorporate that alone is pretty confusing the 2018 letter reserves a defense based on the 2017 letter but then proceeds to consider the claim on the merits and attach the appeal procedure which i will argue is perfectly compliant you the court also is considered the context of 2017 letter this is a very unusual circumstance where the beneficiary dies and the fund is communicating with family members the beneficiary understandably i wanted to ask you about that um was the 2017 letter correct on the merits or was the money owed had it been requested properly as you view it i you know i don't think the issue matters but i think the answer is yes the 2018 letter was correct on the merits because when you're converting because this case involves the conversion of a benefit from a monthly payment to a lump sum may 1 2017 was designated as the day of the conversion the plan was certainly written in a way that could be construed to say that when you're evaluating the amount of the lump sum you're evaluating the amount the actuary value at the date on the day of the conversion on the date of the conversion mrs harman was already dead the monthly benefit was worth nothing therefore the lump sum is also worth nothing therefore the benefit denial decision is correct you're looking at the may 1 not when she requested it okay right i think the plan is based on what section of the plan based on the plan based on the plan language that governs conversions also based on the discretion given to an administrator interpret the plan that the plan doesn't specify on what day you measure the value of the benefit certainly allows the administrator to use her his her discretion to say we use the conversion day which mrs jamal did not object to to measure the value of the benefit and don't you think that's what we should send back that question because it seems to me the way y'all phrased it to her uh she would think that once she asked for it she's entitled to it and that she doesn't have to live long enough for it to sort of arrive in the mail i don't think sending it back is appropriate here because the march 2nd letter in you know after it gave her the decision on the merits it didn't attach the full appeal procedure under that appeal what that appeal procedure says is if there's an initial benefit denial you have 60 days to appeal that decision there's a first level appeal denial then you have to file a second level appeal within 60 days regardless of whether she was confused or not she should have understood from reading that document she has 60 days in the receipt of the march 2nd 2018 why wouldn't she think it was 60 days from april 2017 and she don't have a time machine because if that was the case then there was no reason for the pension fund to attach the appeal procedures if the appeal is already in place it's to show you know you messed up but that's not the that's not a reason the the the reason was to explain to her where appeal rights were that's why the full appeal procedure was attached and what would tell her that what would tell her that you're not applying that to the 2017 but only to the 2018 what sentence because the attachment i mean in the letter right the march 2nd 2018 letter would not have considered a claim on the merits if the fund sole position was it was time barred it was it was a reserve the time bar reference was a reservation of defense not the ground for denying the claim the entire second but she's just supposed to infer that you you're not shut showing me a sentence where that's clear what the second way that's clear is because the top page two says we reserve the right to assert the claim what the the request for benefit was untimely it doesn't say is untimely just as we reserve the right to assert is untimely thereby making it very clear it's a reservation of defense not a claim on the merits that was the reason for denying the claim okay and to get back to the conversation you had with judge higginson uh what is there some separate standard in erisa for someone who has a case that says you treat them differently and how letters are written and so on well i think exhaustion ultimately is a prudential standard so you look at what should the claimant have understood and how the claimant should have proceeded now the claimant had a counsel certainly provides additional reasons but it should have understood there was an appeal available and that should it have to be taken in order to exhaust immature procedures well i'm just going to carry that out one more piece if we really are looking at what really happened do we look at the concept of counsel or do we look at the actual counsel and my experience is most lawyers are totally unfamiliar with erisa and does that matter mr staub sort of alluded to that does that matter if we're looking at the full picture does it matter that you have a lawyer who really doesn't understand that erisa is quite different than a if that wasn't a record and i think the court potentially could the problem here is there's simply nothing in the record about roger javier's experience or lack of experience in erisa matters so whatever attorney staub may say about javier's lack of experience that simply is not supported by this record so you're saying that we should have a presumption that the attorney that if we're looking at this prudential we're looking at the whole picture and all of that so i'm walking with you down that path that the presumption is that attorneys are very familiar with erisa even though i know that presumption to be wrong i i you know i'm not saying there should be a presumption i'm saying this if terry wants to argue exhaustion should be waived because i wasn't represented by experience counsel is terry's burden to produce evidence in the record establishes that all right i understand that okay besides mcgowan just because your time's running low what what substantial compliance case would you say is closest where a court has said this type of letter not just the attachment is substantial compliance telling a beneficiary their time limits i would argue that what we have here is not substantial compliance it's full compliance if you look at 25 60 503 g everything that's required by that regulation is in the march 2nd 2018 letter there's nothing the regulation that says you cannot reserve your right to raise timeless defenses in a benefit denial letter i guess i'm just asking i'm rejecting no i disagree with the framework that there's only substantial compliance here okay let me let me you probably know the cases pretty well the first circuit forcier decision the 11th circuit watts decision they're both about courts looking at the full set of communications to ask would a reasonable interpretation by a layperson have understood there's an exhaustion deadline do you favor either of those two cases do you have any other case where a court said you know this letter should have been clear enough to this the average layperson what's the case you think is most factually similar it would be within the fifth circuit would be the bourgeois case the what case the bourgeois case 250 okay yeah thank you but even you know but even beyond that what way you know again this is not substantial compliance this is full compliance requirements of 2560 503 g and given that terry i did not file a lawsuit before march of 2018 you have to look at all the communications between the fund and the claimant so here the march 2nd 2018 letter is compliant and therefore trigger the exhaustion requirement and regarding whether or not the state was entitled to documents during the litigation remember from the very beginning of the case there was a motion dismissed that was pending and when that motion dismissed was granted the benefit denial was no longer before the court so even if there is a requirement to file administrative record in a benefit denial case this was never a life benefit denial case because first motion dismiss was pending and then the motion of dismiss was granted whether or not there were any the pension funding any obligation to documents information to support other ask to refute other aspects of terry's claim federal rules of civil procedure and there's no dispute that a state in this case has neither challenge nor has waived the right to challenge the magistrate judge's denial of his motion to compel the pension fund does states not entitled to a single additional piece of information in this case because the motion to compel was denied it wasn't and that denial wasn't timely appeal and we stand on the briefs for the remaining issues that are raised by terry on this on this appeal all right thank you counsel we appreciate your arguments and we'll now turn back to mr stobb for his rebuttal i'm going to change to answer your question about the merits to begin with so the the plan's position is that despite the fact that the plan language says that she can reduce her benefit to a lump sum benefit at any time is the operative language that because the plan had already paid a monthly benefit in april that the next benefit wasn't going to come due that's nonsense on the face of it the actuarial value is the remaining stream of payments when the right is exercised which is the at any time so she exercised on uh when they received the letter on on april the fourth and and certainly there was a remaining value to be calculated at so when when this letter arrived and it was sort of the end of predecessor council's representation and i received the case i personally being a very experienced erisa council did not know what procedural context that i thought this case was in and that's why i both filed of the lawsuit and wrote the plant wrote the plan as well and said you know hey if you guys want to go ahead and and go through the administrative proceeding i don't think you've concluded it properly and you can go ahead and do that i'll do that i'll participate either way of course i never got any kind of so you wrote the november 2018 letter i wrote the november 2018 letter yes and that was after suit had already been filed though a couple of days after suit was filed but i mean i to be a little persnickety you didn't say wow that letter back in in in april or march was confusing you just said i want my administrative review because i never construed it as anything other than a response to the threatened litigation from the javier firm which i think was one proper construction of this plan was to say that because that was a vested non-forfeitable benefit that it was a extra erisa contractual and and so he demanded payment and this was no you don't get payment and all the reasons why all right thank you very much thank you thank you both sides we appreciate your argument the case is under submission and this concludes the arguments for the day